**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Timothy J. Casner, | ) CIV 10-8100-PCT-NVW (MHB) |
| Petitioner, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| | ) |
| William Gaspar, et al., | ) |
| | ) |
| Respondents. | ) |
| | ) |

TO THE HONORABLE NEIL V. WAKE, UNITED STATES DISTRICT JUDGE:

Petitioner Timothy J. Casner, through counsel, has filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 5). Respondents filed an Answer (Doc. 14), and Petitioner filed a Reply (Doc. 23).

## BACKGROUND

On October 16, 1997, Petitioner was indicted on three counts of theft, twelve counts of residential burglary, one count of attempted residential burglary, and one count of non-residential burglary. (Doc. 14, Exh. A.) Petitioner was subsequently indicted on one additional count of theft and three additional counts of residential burglary. (Doc. 14, Exh. B.) After a jury trial, Petitioner was found guilty of seven counts of residential burglary, and one count of theft. (Doc. 14, Exh. C at 1.) The Arizona Court of Appeals set forth the following facts in its memorandum decision affirming the trial court's judgment and sentence:

> Defendant worked as a painter of mobile homes and manufactured houses in Prescott, Arizona, during a two-year period when a series of burglaries were reported to local police. Each burglary was characterized by surreptitious entry when the occupants were away, followed by the theft of jewelry or other

small valuables.  An investigation of the burglaries led police to discover that defendant had painted or performed handy work on each of the burglarized homes, or had some other connection to the victim.

.     .     .

Detective Cahall ... discovered the connection between defendant and the victims of the burglaries, and also discovered that defendant engaged in a significant amount of pawn activity.

.     .     .

Cahall also contacted friends of defendant and people who worked with him on painting jobs.  Among these contacts were defendant's uncle, Gary Lewis, who was facing unrelated drug drugs.  Lewis agreed as part of a plea bargain in the unrelated case to assist the investigation by wearing an audio body wire and attempting to elicit incriminating statements from defendant ... .  While wearing the wire, Lewis discussed the investigation with defendant, and defendant responded by making vaguely incriminating remarks.  Specifically, defendant made such comments as "if they had shit I would have been arrested a long time ago," "they don't have anything, everything I sold is gone, melted down," and "the next time I steal anything Gary, it's going to be worth it."  In addition, defendant instructed Lewis on what statements he should make to police to correspond with defendant's own statements.  Defendant also commented extensively about "getting rid of shit," and the lack of physical evidence against him regarding the burglaries.

.     .     .

[T]he evidence demonstrated that someone had entered the homes of people for whom defendant had done painting or other handy work, or with whom defendant was otherwise connected.  Each victim testified that they hired defendant to work in the home, defendant came to the home to give an estimate, defendant then did the work, and the homes were later burglarized.

In some instances, the witnesses testified that they discussed with defendant whether the house was armed with an alarm system or when the occupants would be out of town. In at least two instances defendant befriended the occupants' dog.

.     .     .

Lewis [defendant's uncle] testified that he was aware defendant was burglarizing the homes, and that Lewis requested defendant not burglarize homes where Lewis assisted him, as Lewis was on intensive probation. ...

(Doc. 14, Exh. C at 2-5.)[1]

---

[1]  In his Reply, Petitioner makes various conclusory objections to selective portions of the Arizona Court of Appeals' factual background.  This Court, however, may presume that the Arizona Court of Appeals' factual recitation is correct.  See 28 U.S.C. 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 769 (1995).

1    Petitioner timely appealed and his counsel submitted an opening brief to the Arizona

2    Court of Appeals in compliance with Anders v. California, 386 U.S. 738 (1967), and State

3    v. Leon, 451 P.2d 878 (Ariz. 1969), avowing that he had searched the record and found no

4    arguable question of law that was not frivolous to raise on appeal.  (Doc. 14, Exh. C at 2.)

5    Petitioner was afforded the opportunity to file a supplemental brief and he did so, raising

6    eight issues: (1) error in the refusal of the trial court to sever each of the counts; (2) probable

7    cause based upon alleged false testimony; (3) prosecutorial misconduct; (4) judicial and juror

8    misconduct; (5) failure to exclude from the court room the State's agent after invocation of

9    the rule of exclusion; (6) refusal to give a Willits[2] instruction; (7) error in the admission into

10   evidence of tape recordings; and (8) the verdicts were not supported by substantial evidence.

11   (Doc. 14, Exh. D.)

12   On February 13, 2001, the Arizona Court of Appeals affirmed Petitioner's convictions

13   and sentences.  (Doc. 14, Exh. C.)  Petitioner then filed a petition for review in the Arizona

14   Supreme Court which was subsequently denied on August 15, 2001. (Doc. 14, Exhs. E, HH.)

15   On September 1, 2001, Petitioner filed a notice of post-conviction relief and,

16   thereafter, filed a petition for post-conviction in which he raised the following claims: (1)

17   insufficient evidence to support the guilty verdicts; (2) his convictions violated the U.S. and

18   Arizona Constitutions; (3) ineffective assistance of counsel; (4) his rights under the U.S. and

19   Arizona Constitution were violated as a result of being denied access to a prison law library.

20   (Doc. 14, Exhs. F, G.)

21   The trial court denied relief.  (Doc. 14, Exh. H.)  In doing so, the trial court concluded

22   that: (1) the petition was untimely; (2) Petitioner's sufficiency of the evidence claim was

23   precluded because it was raised and rejected on direct appeal; (3) Petitioner's sentencing

24   claim was precluded because Petitioner failed to raise it on direct appeal; and (4) Petitioner's

25   remaining claims failed to raise a colorable claim entitling him to relief.  (Doc. 14, Exh. H.)

26   Petitioner did not seek review of the trial court's decision.

27

28

_____

[2]   State v. Willits, 393 P.2d 274 (Ariz. 1964)

1    On February 24, 2003, Petitioner filed his first petition for writ of habeas corpus in

2    this Court and raised five claims: (1) the trial court's motion to sever violated his right to due

3    process and a fair trial; (2) the verdicts were not supported by sufficient evidence; (3)

4    prosecutorial misconduct; (4) juror misconduct; (5) the trial court's admission of tape-

5    recordings of Petitioner and his uncle violated Petitioner's right to due process and a fair

6    trial.  (Doc. 14, Exh. I.)

7    On March 25, 2004, while his habeas petition was pending, Petitioner filed a second

8    notice of post-conviction relief and requested counsel.[3]  (Doc. 14, Exh. J.)  Petitioner was

9    appointed counsel and, through counsel, filed a "Successive Petition for Post-Conviction

10   Relief" raising a single claim: that he was entitled to relief based on newly discovered

11   evidence that Gary Lewis committed perjury during his trial. (Doc. 14, Exh. L.)  Petitioner,

12   however, voluntarily withdrew his Successive Petition.  (Doc. 14, Exhs. M, N.)

13   On March 13, 2006, this Court dismissed Petitioner's habeas petition with prejudice.

14   (Doc. 14, Exh. O.)

15   On September 17, 2007, Petitioner filed a third successive petition for post-conviction

16   relief alleging: (1) newly discovered evidence reflecting that: (i) audiotape recordings

17   presented at trial may have been altered; (ii) the disclosed police reports had been altered;

18   and (iii) the state knowingly presented the perjured testimony of Gary Lewis; (2) ineffective

19   assistance of trial and appellate counsel for failing to raise the alleged discovery violations;

20   and (3) actual innocence based on a claim that no reasonable fact finder would have found

21   him guilty beyond a reasonable doubt.  (Doc. 14, Exh. P.)

22   On February 4, 2008, the trial court dismissed the third successive petition.  (Doc. 14,

23   Exh. Q.)  First, the court found that all five claims were precluded under Arizona Rules of

24   Criminal Procedure. (Doc. 14, Exh. Q.)  It specifically noted that the claim regarding Gary

25   _____

26       [3] Petitioner simultaneously filed a pro per (second) petition for post-conviction relief
     claiming newly discovered evidence reflecting that: (1) the State utilized the perjured
27   testimony of Gary Lewis; (2) the police reports had been doctored; and (3) the audio tapes
     had been altered. (Doc. 14, Exh. K.)  Petitioner ultimately withdrew his petition. (Doc. 14,
28   Exhs. M, N.)

Lewis' testimony had been previously raised in Petitioner's second petition for post-conviction relief, and that Petitioner's voluntary withdrawal constituted a waiver of his ability to re-raise the claim. (Doc. 14, Exh. Q.) Moreover, Petitioner had previously raised an ineffective assistance of trial and appellate counsel claim and was thus precluded from re-raising the claim. (Doc. 14, Exh. Q.) Finally, the court found that "[n]ot withstanding this Court's analysis and conclusion that the matters raised by [Petitioner] are precluded," Petitioner had failed to meet his burden of establishing actual innocence under Arizona Rule of Criminal Procedure 32.1(h) and, thus, the petition raised no claim of material issues of law or fact which would entitle Petitioner to post-conviction relief. (Doc. 14, Exh. Q.)

Petitioner subsequently filed petitions for review in the Arizona Court of Appeals and Arizona Supreme Court, which were denied on March 27, 2009, and June 30, 2009 respectively. (Doc. 14, Exhs. R, S.)

On September 17, 2009, Petitioner filed a "Motion for Order Authorizing District Court to Consider Successive Habeas Petition" in the Ninth Circuit Court of Appeals. (Doc. 14, Exh. T.) Specifically, Petitioner requested permission to raise the following claims in a successive habeas corpus petition based upon alleged newly discovered evidence: (1) the state failed to disclose unaltered recordings of conversations between Petitioner and a government informant; (2) the State failed to disclose original, unaltered police reports; (3) the prosecutor introduced testimony it knew or should have known was perjured; (4) trial counsel was ineffective for failing to investigate and raise discovery violations regarding the tape-recorded conversations and police reports; (5) actual innocence; and (6) judicial misconduct. (Doc. 14, Exh. T.) The Ninth Circuit Court of Appeals subsequently granted the motion. (Doc. 14, Exh. U.)

On April 15, 2010, Petitioner filed the pending successive Petition for Writ of Habeas Corpus.[4] (Doc. 5.) In the Petition, Petitioner raises five grounds for relief:

---

[4] On June 14, 2010, this Court directed the clerk's office to strike the successive habeas petition, along with several other filings, and file it as a new case with a new case number. (Doc. 14, Exh. V.)

(1) "Newly discovered evidence of the State's discovery violations demonstrates that Petitioner's convictions were obtained in violation of Petitioner's rights under the Due Process Clause of the 14th Amendment of the United States Constitution as stated in *Brady v. Maryland*";

(2) "The undisclosed evidence, combined with newly discovered evidence of Gary Lewis' recantation, reveals that the prosecutor introduced testimony it knew or should have known was perjured, in violation of both state and federal law";

(3) "The newly discovered evidence further demonstrates that Petitioner received ineffective assistance of trial counsel in violation of the United States Constitution";

(4) "Based upon the newly discovered evidence, Casner has established a *prima facie* case that no reasonable factfinder would have found him guilty of the offenses"; and

(5) "Since Casner's trial and post-conviction proceedings, Casner's trial judge has admitted to misconduct and resigned." (Doc. 5.)

## DISCUSSION

In their Answer, Respondents contend that with respect to Grounds One through Four, Petitioner fails to satisfy the necessary elements for filing a successive habeas petition. Respondents also claim that Ground Five is not cognizable on federal habeas review. Respondents request that the habeas petition be denied and dismissed with prejudice.

## A.   SUCCESSIVE PETITION UNDER THE AEDPA[5]

The AEDPA "greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications." Tyler v. Cain, 533 U.S. 656, 661 (2001). 28 U.S.C. § 2244(b)(2) provides:

A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application *shall be dismissed* unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; *and*

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

---

[5] Antiterrorism and Effective Death Penalty Act of 1996.

(emphasis added).

28 U.S.C. § 2244(b)(3) further provides that, before filing a second or successive habeas petition, a petitioner must first obtain authorization from the Ninth Circuit Court of Appeals:

> (A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

> (B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.

> (C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a *prima facie* showing that the application satisfies the requirements of this subsection.

Thus, section 2244 establishes two independent gates through which a successive petition must pass before the merits will be addressed.  First, the court of appeals must determine whether the successive petition makes a *prima facie* showing that it can meet the requirements of § 2244(b)(2).  This requires "a sufficient showing of possible merit to warrant a fuller exploration by the district court," and permission will be granted when it "appears reasonably likely that the application satisfies the stringent requirement for the filing of a second or successive petition."  In re Morris, 328 F.3d 739, 740 (5th Cir. 2003) (quoting Bennett v. United States, 119 F.3d 468, 469-70 (7th Cir. 1997)).[6]  Second, before addressing the merits of the successive petition, the district court must independently determine whether the petition actually satisfies the stringent § 2244(b)(2) requirements. See id. at 741.  The district court "must conduct a 'thorough' review to determine if the motion 'conclusively' demonstrates that it does not meet AEDPA's second or successive motion requirements." Reyes-Requena v. United States, 243 F.3d 893, 899 (5th Cir. 2001) (citing United States v. Villa-Gonzalez, 208 F.3d 1160, 1165 (9th Cir. 2000).

Since Petitioner's claims are not based upon any new, retroactive Constitutional rule, Petitioner must demonstrate that the factual predicates underlying his claims could not have

---

[6] Petitioner sought such authorization, and, on March 3, 2010, the Ninth Circuit granted the request.  (Doc. 14, Exh. U.)

been discovered previously through due diligence.   See 28 U.S.C. § 2244(b)(2)(B)(i).

Petitioner, however, has failed to meet this burden.

### 1.   Ground One – Wire Tapes and Police Reports

In Ground One, Petitioner claims that "unaltered wire tapes" and "original police reports" – which the State allegedly suppressed – constitute "newly discovered evidence ... of such critical significance that the evidence probably would have changed the verdict."

### a.   Wire Tapes

Regarding the "wire tapes," the record demonstrates that Petitioner knew of the factual predicate for this claim well before the filing of his first habeas petition.  Petitioner concedes in the instant Petition that, during trial, he filed a motion *in limine* to exclude the audio tapes because: (1) they allegedly violated the rules of evidence, were of poor quality, and were unreliable; and (2) the State only planned on introducing excerpts.  (Doc. 5 at 5-6.)  At oral argument on the motion, Petitioner's counsel specifically stated:

> My argument at the outset is that these tapes are virtually inaudible, they are of poor quality.  I have heard now what *purports to be the original* that was played in your court and it is not significantly clearer than the copies that I have been given to listen to.
>
> I have listened to these tapes for hours.  My client has listened to these tapes for hours.  In the absence of a printed transcript there is absolutely no evidentiary value to the jury.  I would defy anyone to reasonably say they could sit here and listen to the tapes and understand more than an occasional word, usually an expletive from one or the other people on the tape.
>
> .      .      .
>
> My previous argument in the other context of the State wanting to provide transcripts remain the same; if you give them a transcript and they're reading along the transcripts and not listening to these unintelligible screechy, static-filled tapes and you give them the tapes without a transcript they won't understand them.

(Doc. 14, Exh. W at 5-6.)  Thus, Petitioner was aware of an issue regarding the accuracy and reliability of the audio tapes at the time they were presented at trial.

Further, on January 28, 2000, Petitioner took the stand at a presentence hearing and requested an evidentiary hearing.  (Doc. 14, Exh. X at 37.)  At the conclusion of the hearing, the court continued sentencing for four weeks to allow Petitioner to meet with advisory

1  counsel and submit a proper motion to the court as to why an evidentiary hearing was

2  necessary.  (Doc. 14, Exh. X at 56-58.)

3        On March 2, 2000, Petitioner filed a motion for a new trial, in which he argued that

4  he was entitled to a new trial based on alleged prosecutorial misconduct including, in part:

5  (1) "useing [sic] hearsay, conjecture and untrue statements"; (2) "with holding [sic] evedance

6  [sic] of discovery (*Brady*)"; (3) "tampering with evedance [sic] and witnesses"; (4)

7  "committing perguy [sic] to get Endictment [sic]"; and (5) "no evidants [sic] against

8  [Petitioner], and verdict was contrary to law and evidence."  (Doc. 14, Exh. Y.)  Four days

9  later, Petitioner filed a "motion to show court evidents [sic] with held [sic] and coverd [sic]

10 up by defence [sic] councel [sic] and prosacution [sic] and to continue sentencing on cases

11 # CR 98-0002 -– CR 97-0653."  (Doc. 14, Exh. Z).  In the motion, Petitioner again requested

12 an evidentiary hearing "to show the court evidence that was with held [sic] by the prosicution

13 [sic] also evidence shows that discovery evidence was tamperd [sic] with, and evidence sows

14 [sic] that the prosecution has been guilty of misconduct, pergary [sic], hearsay -– conjecture."

15 (Doc. 14, Exh. Z).

16        At the sentencing hearing, the trial court questioned Petitioner about his motions, as

17 follows:

18        THE COURT: [Petitioner], do you wish to add anything to these motions?

19        [PETITIONER]: Briefly, if I could, Your Honor, just on the fact that I put
         them in and hope you grant them.  I mean I have the evidence.  It's been real
20       hard for me to work through the jail, and I have every officer that brought me
         mail that has been held up over a week and a half sign letters to let the court
21       know I'm not making excuses.  I have compiled all the evidence I have here,
         but I also have video tapes that are at the Crime Lab right now.
22
         THE COURT: Video tapes of what, sir?
23
         [PETITIONER]: Evidence showing tapes were cut and also in the trial tapes
24       that it was discovery evidence that was given to the Court or given to my
         lawyer and those were cut *and also the audio tapes that they used in court*
25       *were also cut.  I have real good proof that they were – they were cut.*

26 (Doc. 14, Exh. AA at 2-3) (emphasis added).

27

28

Additionally, after Petitioner was sentenced, appellate counsel filed an <u>Anders</u> brief and Petitioner filed a supplemental brief.  As part of his supplemental brief, Petitioner included a letter in which he stated the following:

> I am also sending this letter along with my Supplemtal [sic] Brief to let you know that I would like the right to Amend this brief as to many more Ethical, Judical [sic], State, and Constitutional law violations, as I only have a set amount of pages to raise all these issues.
>
> (1) Tamporing [sic] with Audeo [sic] and video tapes.
>
> (2) Flagrantly misleading the grand jury, and trial Judge also the jury
>
> (3) With holding [sic] and tampering with dicovery [sic] evidence, and wittnesses [sic]
>
> (4) Altering origanal [sic] police reports.
>
> (5) Purgury [sic]

(Doc. 14, Exh. BB.)

In its memorandum decision affirming Petitioner's convictions and sentences, the Arizona Court of Appeals addressed Petitioner's claims as follows:

> [Petitioner] also requests an evidentiary hearing to allow him to present evidence that will prove his allegations of deceit and misconduct by investigating officers, the state, and the judicial tribunal. [Petitioner] has had an adequate forum to present these arguments and his request for an additional evidentiary hearing is denied.

(Doc. 14, Exh. C at 17 n.2.)

Thereafter, Petitioner filed his first petition for post-conviction relief.  After the State responded, Petitioner filed a letter with the state court, in which he stated, "[t]here is physical evidence that shows discovery evidence was tamperd [sic] with before disclosure to the defence [sic].  (i.e. video -– audio tapes also police reports)."  (Doc. 14, Exh. CC at 1.)

While Petitioner's first habeas petition was pending, he filed a second petition for post-conviction relief claiming that the wire tapes had been altered:

> If the evidence of this case was disclosed in its original form, then at the very least the defense could have shown that on the wire tape [Petitioner] told Lewis that he never burglarized anyone much less any of his friends or customers.  The wire tapes ... need to be [reviewed] in a[n] evidentiary hearing ... to show the validity of these claims and effect they had before and during trial and impacted on the judgment in this case.

1   (Doc. 14, Exh. K at 16.)

2           The above evidence clearly demonstrates that Petitioner discovered the factual

3   predicate for his claim regarding the "wire tapes" well before the filing of his first habeas

4   petition.  Despite the evidence set forth in the record, in his Reply to Respondents Answer,

5   Petitioner sets forth a litany of reasons why the wire tapes (and police reports – which will

6   be addressed below) are newly discovered.  Specifically, Petitioner claims that he "was

7   dealing with the fall-out of hiring two different attorneys who turned out ... not to be licensed

8   to practice law ..., and tried to reassemble his trial documents and pursue post-conviction

9   relief, while trying to overcome the preclusive effects suffered by the deficient petitions filed

10  by the non-attorneys, and trying to accomplish all of that from behind bars."  In addition,

11  Petitioner argues that the tape recordings were "of hours and hours of conversations" taped

12  over several days, and claims that there is no way that he could have memorized everything

13  discussed during those conversations and somehow have known that portions of the tapes

14  were cut.  He further suggests that there is no way that the police reports could have been

15  submitted for forensic handwriting analysis at the time of trial because he had no idea at the

16  time of trial that Detective Cahall had altered the police reports.  Petitioner contends that "it

17  was presumed that Det. Cahall would follow the law and write supplemental reports during

18  her investigation rather than make changes to the original police reports authored by other

19  police officers and other police agencies."  Next, Petitioner claims that the pretrial and

20  presentencing motions "in no way related to the issue that the prosecutor intentionally cut out

21  pieces of conversations from the tapes and spliced together the remaining portions to make

22  the conversation appear as if it continued uninterrupted," and that his "simple mention at the

23  presentence hearing that he wanted to present such issues is not sufficient to preclude [him]

24  from presenting newly discovered evidence ... ."  Lastly, Petitioner asserts that his letters to

25  both the state and appellate courts "simply reference[d] general suspicions that discovery

26  evidence was tampered with and generally list[ed] video tapes, audio tapes, and police

27  reports," and should not be a reason for precluding him from raising his newly discovered

28  evidence.

Having reviewed the arguments set forth in Petitioner's Reply, the Court disagrees. The record clearly shows that his theories regarding the "wire tapes" and "police reports" and the facts on which they are based are not new. Rather, Petitioner has been aware of the factual predicate of his claims at least since the time of trial – or shortly thereafter. See, e.g., United States v. Lockett, 919 F.2d 585, 591 (9th Cir. 1990) (in the context of Fed.R.Crim.P. 41, "newly discovered evidence" does not mean "newly available evidence"); Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998) ("[Petitioner] is confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim"); Libby v. Magnusson, 177 F.3d 43, 50 (1st Cir. 1999) (under section 2244(b)(2)(B)(i), the correct date is when the petitioner knew of his alibi witness, not when the witness is "ready" to provide evidence); Escamilla v. Walls, 2004 WL 1718657, *3 (N.D.Ill. 2004) ("a court must focus on when the factual predicate could have been discovered through the exercise of due diligence, not when it was actually discovered by a given prisoner") (citing Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2001). Accordingly, he cannot show that these facts "could not have been previously discovered through the exercise of due diligence" as required by § 2244(b)(2)(B)(i).[7]

### b.     Police Reports

Petitioner's claim regarding the police reports as newly discovered evidence is equally unavailing. The police reports, which Petitioner alleges were altered by the inclusion of Detective Cahall's handwritten notes, were all disclosed prior to trial. At trial, Detective Cahall repeatedly testified that she was not the original investigating officer, and that, at the time of her investigation, the other burglaries were unsolved. (Doc. 14, Exh. DD at 68-73, 82, 93, 98-106, 170-71.)

---

[7]  Petitioner avers in his pending Petition that he obtained copies of the audio tapes from the county attorney's office and submitted them to a forensic expert for analysis. (Doc. 5 at 6.) Petitioner has not demonstrated why he could not have obtained the tapes through this same process, or why he could not have alternatively requested a subpoena for the production of the tapes during his first post-conviction relief proceedings.

Petitioner's contention is further belied by the fact that, even before sentencing, Petitioner alleged that the police reports had been altered.  During the January 28, 2000, presentencing hearing, in which Petitioner requested an evidentiary hearing, he stated:

> I have police reports, *changed police reports*.  I have a mountain of evidence. Rodney King thought he had evidence to convince people about the police officers.  I have ten times that.  You know, like I said I can prove my freedom going to the electric chair.  If I'm wrong you can throw the book at me, Your Honor.  Like I said, I have enough stuff that was supposed to be put in court. I worked very hard to get all this put together and many people seen it [sic], many people seen [sic] this evidence I have.  That's why I don't believe I should be sentenced.

(Doc. 14, Exh. X at 37) (emphasis added).  Moreover, as has been previously discussed, Petitioner raised the tampered evidence issue in two subsequent motions, (Doc. 14, Exhs. Y, Z), and again addressed his allegation in a letter to the Arizona Court of Appeals during his direct appeal, arguing that the state had altered the original police reports (Doc. 14, Exh. BB). Finally, during his first round of post-conviction proceedings, Petitioner claimed that, "[t]here is physical evidence that shows discovery evidence was tamperd [sic] with before disclosure to the defence [sic].  (i.e. video -– audio tapes *also police reports*)."  (Doc. 14, Exh. CC at 1) (emphasis added).

During his second petition for post-conviction relief, which was filed while his first habeas petition was still pending, Petitioner made specific allegations regarding the police reports:

> Attached are two exhibits, C-1, C-2, these are the same original reports, except that C-1 has on the first page, some extra writing on it and yes it is Cahall's not what she writes, bottom left.  (On the line is original officer's writing, officer Wiler, and [Petitioner] is not mentioned at all!)
>
> .      .      .
>
> Heres [sic] a great question, what is Cahalls [sic] hand writing and false facts doing on officer Wilder's report dated August 14, 1995 when Cahall went become [sic] involved in this case or a detective in Prescott until October of 96?  Cahall does this to at least #4 reports.
>
> .      .      .
>
> (c) Falsified police reports: In the discovery of the original police reports that were disclosed by the state, were falsified and the true reports were suppressed from the defense. ... This is just one example of many reports that Cahall does this to ... .

1    (Doc. 14, Exh. K at 10, 16).

2         Again, other than the conclusory remarks in his Reply, Petitioner offers no sufficient

3    explanation why he could not have attempted to raise this ground for relief in his first habeas

4    proceeding, which was still pending at the time he filed his second petition for post-

5    conviction relief.

6         Thus, as with the audio tape, the record demonstrates that Petitioner discovered the

7    factual predicate regarding the police reports before the filing of his first habeas petition and,

8    as such, this claim does not rest on a factual predicate that he could not have discovered

9    previously through the exercise of due diligence.

10        **2.    Ground Two – Testimony of Gary Lewis**

11        In Ground Two, Petitioner alleges that Gary Lewis' perjured testimony constitutes

12   "newly discovered evidence that no reasonable factfinder would have found him guilty at

13   trial." Contrary to Petitioner's assertion, issues regarding Lewis' credibility and motives for

14   testifying are not based upon newly discovered evidence and are thus insufficient to sustain

15   a successive petition for habeas corpus relief.  Petitioner has conceded that the allegations

16   regarding Lewis' testimony appear in an affidavit by Lewis dated December 17, 2004. (Doc.

17   5 at 22.)  In that affidavit, Lewis stated that he felt pressured by the State to testify falsely

18   against Petitioner in fear of receiving 15 years in prison.  (Doc. 5 at 22.)  In fact, Lewis'

19   testimony and affidavit were the basis of the claim for relief Petitioner raised in his second

20   petition for post-conviction relief, which was filed on December 20, 2004, in which

21   Petitioner argued that Lewis testified falsely in exchange for a favorable plea agreement.

22   (Doc. 14, Exh. L.)  Yet, Petitioner offers no reasonable explanation as to why he failed to

23   raise this claim during his first round of habeas proceedings – other than he needed time to

24   get Lewis' affidavit, and his untenable assertion that the claim raised in his second petition

25

26

27

28

1  for post-conviction relief was based on Lewis' "unreliable" testimony rather than "perjured"

2  testimony – which were still pending in this Court at the time.[8]

3        Accordingly, this claim does not rest on a factual predicate that Petitioner could not

4  have "discovered previously through the exercise of due diligence."

5        **3.      Ground Three – Ineffective Assistance of Counsel**

6        Petitioner asserts in Ground Three that trial counsel was ineffective for failing to

7  investigate and present the alleged discovery violations regarding the wire taps and police

8  reports.  As previously demonstrated, however, the factual predicates for this claim were well

9  known to Petitioner during his trial, presentencing proceedings, post-conviction proceedings,

10 and during his first habeas petition.  In fact, Petitioner concedes that he attempted to raise the

11 alleged discovery violations as early as his motion for new trial and motion for evidentiary

12 hearing, but his trial counsel and appellate counsel "refused to investigate or present." (Doc.

13 5 at 26.)  Yet, he fails to explain why such an ineffective assistance of counsel claim was not

14 raised in his first habeas petition.  Petitioner's claim that he was unable to fully investigate

15 and present his claim because he represented himself during post-trial proceedings is

16 unpersuasive.[9]  Accordingly, this claim is not based upon newly discovered evidence as it

17 does not rest on a factual predicate that Petitioner could not have "discovered previously

18 through the exercise of due diligence."

19        **4.      Ground Four – Prejudice pursuant to § 2244(b)(2)(B)(ii)**

20       In Ground Four, Petitioner contends that based on the newly discovered evidence

21 referred to in Grounds One and Two, he has "established a *prima facie* case that no

22 reasonable factfinder would have found him guilty of the offenses."  Specifically, Petitioner

23 argues:

24 _____

25       [8]  Additionally, Lewis' credibility and motive for testifying were fully developed
26 during trial and were duly submitted to the jury for their determination.
        [9]  Petitioner's assertion that he was "forced to represent himself post-trial" is
27 misleading.  The record reflects that, during a post-trial proceeding, Petitioner requested that
   he be permitted to proceed pro per, which was subsequently granted.  (Doc. 14, Exh. GG at
28 1-17.)

Given the newly discovered evidence of discovery violations regarding the original police reports altered by Det. Cahall, the altered wire tapes, and the newly discovered evidence of the State's knowing presentation of the perjured testimony of Gary Lewis, Casner has [] presented clear and convincing evidence that the facts would be sufficient to establish that no reasonable fact-finder would have found Casner guilty beyond a reasonable doubt.

Section 2244(b)(2)(B)(ii), however, requires that a claim presented in a successive habeas corpus petition that was not previously presented be dismissed unless the facts underlying the claim establish that, except for the constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. Notwithstanding Petitioner's failure to meet his burden of proving that the factual bases of Grounds One and Two could not have been previously discovered had he exercised due diligence, his application to file a successive habeas corpus petition must nevertheless be denied because he has failed to meet his burden of proving prejudice, pursuant to 2244(b)(2)(B)(ii). Petitioner has not established by clear and convincing evidence that no reasonable juror would have convicted him of the underlying offenses if he had presented the factual bases underlying his proffered claims at trial.

First, Petitioner's contention that the tape recordings were altered is supported only by his expert's hypothesis that it was "*possible* that part of the original audio had been removed and edited." (Doc. 5, Exh. P) (emphasis added). The expert admits, however, that "[e]ven if [he] were to perform a forensic enhancement of the audio, [he] *would not be able to prove that something had been edited*." (Doc. 5, Exh. P) (emphasis added). Petitioner fails to explain why a reasonable juror would afford any significant probative weight to such an uncertain opinion. This is particularly so when considering that the poor sound quality of the tapes was addressed extensively at trial.

Additionally, Petitioner's suggestion that the police reports, containing the general investigative information of the crimes, as well as, the specific interviews of the victims, might have been deliberately altered to falsely incriminate him, likewise fails to cast doubt on the jurors' verdicts – especially considering that Petitioner, Detective Cahall, and the victims testified and were cross-examined at trial, which allowed the jurors to observe their

1   demeanor in order to assess their credibility.  See Aiken v. Blodgett, 921 F.2d 214, 217 (9th

2   Cir. 1990) (a habeas court may not "redetermine credibility of witnesses whose demeanor

3   has been observed by the state trial court").

4          Finally, the issue of Gary Lewis' credibility and motive for testifying was argued

5   extensively before the jury.  For example, Lewis' plea agreement was admitted as an exhibit

6   during his testimony and was fully addressed by both the State and the defense.  (Doc. 14,

7   Exh. DD at 231-232; Exh. EE at 5, 12, 18.)  Moreover, the defense thoroughly impeached

8   Lewis' credibility on cross-examination, eliciting testimony suggesting that Lewis had

9   fabricated portions of his testimony to secure a favorable plea bargain.  (Doc. 14, Exh. EE

10  at 97-101.)

11         During Petitioner's case-in-chief, the jury heard testimony reflecting that Lewis had

12  previously stated that he lied to the police regarding Petitioner, and that he did so to "[k]eep

13  himself from getting thirty years."  (Doc. 14, Exh. FF at 130-32.)  Defense counsel also

14  elicited testimony reflecting that Lewis had stated that he was being pressured by the police

15  department, was being threatened with prison time, and that "[h]e kind' a concocted a scheme

16  to help himself and threw it in [Petitioner's] direction."  (Doc. 14, Exh. FF at 179-80.)

17         Thus, because Lewis' credibility and motive for testifying was argued before the jury,

18  Petitioner's claim of newly discovered evidence regarding Lewis is of little probative value.

19  Furthermore, recanting testimony six years after the trial, is neither remarkable, nor

20  particularly reliable.  See Carriger v. Stewart, 132 F.3d 463, 483 n.1 (9th Cir. 1997) ("There

21  is no form of proof so unreliable as recanting testimony. ... Those experienced in the

22  administration of the criminal law know well its untrustworthy character.") (Kozinski, J.,

23  dissenting); see also Dobbert v. Wainwright, 468 U.S. 1231, 1233 (1984) ("Recantation

24  testimony is properly viewed with great suspicion.") (Brennan, J., dissenting from denial of

25  certiorari).

26         Accordingly, even if Petitioner's evidence could reasonably be considered "newly

27  discovered," he has failed to establish that no reasonable juror would have convicted him had

28  he presented the evidence at trial.

1    **B.      NON-COGNIZABLE CLAIMS**

2        A federal court cannot grant a habeas writ based solely upon a violation of state law.

3    See 28 U.S.C. § 2254(a) (permitting a federal court to entertain a habeas application "only"

4    on the ground that the prisoner is "in custody in violation of the Constitution or laws or

5    treaties of the United States"); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have

6    stated many times that federal habeas corpus relief does not lie for errors of state law.  Today,

7    we reemphasize that it is not the province of a federal habeas court to reexamine state-court

8    determinations on state-law questions.  In conducting habeas review, a federal court is

9    limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

10   United States."); Little v. Crawford, 449 F.3d 1075, 1083 (9th Cir. 2006) ("[A] violation of

11   state law standing alone is not cognizable in federal court on habeas.").

12       Moreover, merely labeling a claim with federal constitutional language cannot

13   transform a state-law claim into a federal claim.  See, e.g., Langford v. Day, 110 F.3d 1380,

14   1389 (9th Cir. 1996) (Recognizing that a federal habeas petitioner may not "transform a state-

15   law issue into a federal one merely by asserting a violation of due process.  We accept a state

16   court's interpretation of state law, and alleged errors in the application of state law are not

17   cognizable in federal habeas corpus.  Our concern is with [the habeas petitioner's] federal

18   rights.").

19       In Ground Five, Petitioner alleges that the trial judge "admitted to misconduct charges

20   involving falsifying monthly certifications and submitting inaccurate ruling certifications,

21   both of which are required of judges under Arizona law."  However, violations of state

22   judicial ethical rules are not subject to federal habeas corpus relief.  See 28 U.S.C. § 2254(a);

23   Estelle, 502 U.S. at 67-68.  Petitioner fails to raise a cognizable federal claim involving

24   actual or presumed judicial bias.

25                                **CONCLUSION**

26       Having determined that in Grounds One through Four, Petitioner fails to satisfy the

27   necessary elements for filing a successive habeas petition, and that Ground Five is not

28   cognizable on federal habeas review, the Court will recommend that Petitioner's Amended

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 5) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 5) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 17th day of May, 2011.

_____
Michelle H. Burns
United States Magistrate Judge